UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER G. MANGIAFICO,

    Plaintiff,

v.                                         Case No. 3:22cv5693-LC-HTC

SGT JEFFERY NOUSIAINEN, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Christopher G. Mangiafico, proceeding *pro se* and *in forma pauperis*, files this action against Defendants Sgt. Jeffery Nousiainen and Sgt. D. Danio for excessive use of force. ECF Doc. 12. This matter comes before the Court on Defendants' Motion to Dismiss. ECF Doc. 27. Sgt. Danio moves to dismiss the amended complaint for Plaintiff's failure to exhaust. Sgt. Nousiainen moves to dismiss Plaintiff's official capacity claim against him under the Eleventh Amendment.[1] Upon consideration, the undersigned recommends the motion to dismiss be GRANTED as set forth herein.

---

[1] Although it is clear Sgt. Nousiainen is seeking dismissal of only the official capacity claim, at the end of the motion, Defendants suggest that Plaintiff's amended complaint should be dismissed. Plaintiff's excessive force claim against Sgt. Nousiainen in his individual capacity, however, is not being dismissed.

Case No. 3:22cv5693-LC-HTC

## I. BACKGROUND

The following relevant facts are taken from Plaintiff's amended complaint, ECF Doc. 12, and accepted as true for purposes of this Report and Recommendation.

At approximately 3:45 a.m. on April 24, 2018, Plaintiff was exiting the bathroom at Okaloosa Correctional Institution when Defendant Sergeant Nousiainen ordered Plaintiff to submit to a pat search. Sergeant Nousiainen searched Plaintiff's bunk and locker but found no contraband. Nonetheless, Sergeant Nousiainen ordered Plaintiff to "turn around and cuff up." ECF Doc. 12 at 5. Although Plaintiff informed Nousiainen he has a medical pass to only be cuffed in the front, Nousiainen ordered him to be cuffed in the back. Once Plaintiff was cuffed in the back, he was escorted to "see the captain." *Id.* On this walk, Sergeant Nousiainen stops and asks Plaintiff if he "want[s] this to all stop?" to which Plaintiff replies "yes." *Id.* Sergeant Nousiainen then pulled Plaintiff by his handcuffed arm and slammed him onto the sidewalk. *Id.*

Once Plaintiff was on the ground, Sergeant Nousiainen, now accompanied by Sergeant Danio, grabbed his arm and left thumb and wrenched it to the back of his head. Plaintiff screamed in pain. Sergeant Nousiainen and Sergeant Danio then applied more pressure to Plaintiff's joints, which caused more pain and damage to his joints. Sergeant Nousiainen asked Plaintiff "are you gonna quit?" while increasing the pressure to Plaintiff's arm, to which Plaintiff yelled "I quit. I quit!"

*Id.* at 6. Plaintiff heard Defendants discuss fabricating a disciplinary report that Plaintiff spit on them to justify the use of force. As a result, Defendants placed a spit shield on Plaintiff, and he was taken to medical for a pre-confinement medical exam, where he saw Nurse Giles.

## II. FAILURE TO EXHAUST

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory prerequisite to filing suit that federal courts "have no discretion to waive." *Bryant v. Rich*, 530 F.3d 1368, 1373 (11th Cir. 2008). A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

When deciding a motion to dismiss for failure to exhaust administrative remedies, the Court uses a two-step process. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as

true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. It is the defendant's burden to prove "that the plaintiff has failed to exhaust his available remedies." *Id*.

Sergeant Danio has moved to dismiss Plaintiff's excessive force claim for failure to exhaust and argues that none of the grievances Plaintiff filed relating to the excessive force incident mention Danio or even reference a second officer being involved. The Court directed Plaintiff to file a response if he opposed the motion, gave him 30 days to do so, and further advised him that the Court may grant the motion by default under Local Rule 7.1(H) if Plaintiff failed to respond. ECF Doc. 28. Nonetheless, Plaintiff did not file a response. After reviewing the grievances submitted by Defendants,[2] and applying the *Turner* analysis, the undersigned agrees Plaintiff has failed to exhaust his claim against Danio.

Plaintiff filed numerous grievances related to the April 24, 2018, use of force incident. However, none of those grievances mention Sgt. Danio. Instead, in each

---

[2] Through the Declarations of Krissy Stanford and Lawanda Sanders-Williams, employees of the Florida Department of Corrections, Defendants submit a listing of Plaintiff's grievances and appeals. Plaintiff has also filed a copy of some of those grievances and appeals. For purposes of this Report and Recommendation, only those relevant grievances and appeals are discussed.

Case No. 3:22cv5693-LC-HTC

grievance regarding the use of force incident, Plaintiff attributed all the force complained of in the amended complaint to Sgt. Nousiainen. Indeed, in the grievances Plaintiff sought to have only Sgt. Nousiainen reprimanded.

For example, on April 25, 2018, Plaintiff filed an informal grievance (#115-1804-0130) complaining about the use of force incident. ECF Doc. 27-1 at 11. In this grievance, Plaintiff complained only about the conduct of Sgt Nousiainen, who he identified as "Sgt. NoNo." *Id.* He wrote that the Sergeant saw him smoking after lights out 2 days earlier, that he previously worked with Sgt. NoNo in the kitchen, that after cuffing Plaintiff, the Sergeant yanked him around, slammed him to the ground, repeatedly "wrist locked" Plaintiff "with [his] thumb putting [Plaintiff] in pain," and said to the other sergeants and officers that Plaintiff tried to spit on him. *Id.* In the same grievance, Plaintiff complained about Sgt. NoNo bringing him a witness statement to sign. *Id.* at 12. Plaintiff further complained about being fearful of retaliation for not lying on the witness statement and asked for help because he is "being tortured from Sgt. NoNo and Sgt. Hattaway." *Id*.

Nowhere in the 3-page grievance does Plaintiff mention Defendant Danio. Nowhere in the 3-page grievance does Plaintiff mention *any* other officer, by name or otherwise, as being involved in the use of force incident. Likewise, although Plaintiff subsequently submitted two additional informal grievances complaining about the April 24, 2018, use of force incident, neither referenced Danio or another

officer. *See id.* at 14, 17. In the April 30, 2018, grievance, Plaintiff complained specifically about Sgt. Nousiainen's use of a spit shield and asked for the shield to be removed. *Id.* at 14. In the May 19, 2018, grievance, Plaintiff complained about Sgt. Nousiainen handcuffing Plaintiff in the back despite knowing he had a medical pass to be handcuffed only in the front. *Id.* at 17.

Plaintiff also filed several grievances related to two disciplinary reports ("DR") he received as a result of the use of force incident, one for disobeying Sgt. Nousiainen's verbal orders and the other for unauthorized use of drugs. In those grievances, Plaintiff alleged that he did not disobey any verbal orders Sgt. Nousiainen gave him; instead, he told Sgt. Nousiainen that he had a front handcuff pass and could not walk because he had a knee injury. ECF Doc. 27-2 at 5. Plaintiff also alleged he had not been smoking K-2 on the day of the incident, that Sgt. Nousiainen lied about Plaintiff admitting to using K-2, and that the reason he lost his balance when Sgt. Nousiainen approached him coming out of the bathroom was because he has a knee injury. *Id.* at 7; ECF Doc. 27-1 at 15 (May 19, 2018, informal grievance about Sgt. Nousiainen providing false information).

Plaintiff's grievances were denied. The grievance related to the DR for unauthorized use of drugs was denied for several reasons including Plaintiff's admission to smoking K-2, and Nurse Giles advising that Plaintiff did not suffer from any medical condition that would result in the behavior he exhibited that day.

Case No. 3:22cv5693-LC-HTC

ECF Doc. 27-2 at 8. Plaintiff appealed the denial of both grievances. Specifically, as to the DR for the unauthorized use of drugs, Plaintiff stated that he spoke clearly to Nurse Giles, that he requested a drug test, and that when she told him he was stumbling when he came in to see her, he said to her "of course I did, its 4 in the morning I've got a bad knee, I'm shackled, and just got my ass kicked by like 3 officers."[3] ECF Doc. 27-3 at 12.

That appeal is the first and only time Plaintiff mentions other officers being involved in the April 24, 2018, use of force incident. That passing reference, however, is insufficient to put the FDOC on notice of an excessive force claim against Sgt. Danio.

While the Florida Department of Corrections does not set forth what must be stated in a grievance, it does require that "only one issue or complaint is addressed" at a time. *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019) (quoting Fla. Admin. Code R. 33-103.005(2)(b)(2)) (internal quotations omitted). A fair reading of the appeal shows that Plaintiff was grieving the disciplinary report and not the use of force incident. Plaintiff claimed there was no evidence to support the

---

[3] Plaintiff filed an informal grievance on May 19, 2018, against Nurse Giles for providing false information concerning his medical condition – namely, for saying there was no medical condition that would contribute to his behavior on April 24. ECF Doc. 27-3 at 15. The grievance was denied. *Id.* Plaintiff also filed a formal grievance on the same issue, stating that had Nurse Giles checked his medical file, she would have seen his knee injury. *Id.* at 16. The formal grievance was denied. *Id.* at 18. Plaintiff then filed an appeal to the Secretary, relating to the same issue and seeking to have Nurse Giles be reprimanded. *Id.* at 19. The appeal was denied.

Case No. 3:22cv5693-LC-HTC

DR, other than Sgt. Nousiainen's false statements, he sought to have the DR dismissed and the punishments lifted, and claimed video and audio evidence would show Sgt. Nousiainen attempted to get Plaintiff to sign a statement saying he was high and did not know what happened. ECF Doc. 27-2 at 11-13. Indeed, the FDOC logged that appeal as one relating to a disciplinary report. *Id*. Moreover, there can be no doubt that Plaintiff is well aware of the "one issue" requirement since Plaintiff wrote three different grievances about the excessive force incident – each focused on a specific action by Nousiainen.

Further, while the FDOC's rules "mandate[] no level of detail at all, requiring only that whatever facts are stated must be true," *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005), "allowing claims to proceed without any level of detail would thwart the purpose of PLRA's exhaustion requirement, which is to put administrative authority on notice of all of the issues in contention and allow the authority an opportunity to investigate those issues." *Harvard*, 411 F. Supp. 3d at 1244 (internal citations, quotations, and alterations omitted). As the Eleventh Circuit has held, the PLRA "requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved . . . as the prisoner reasonably can provide." *Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000).

The process of having a prisoner exhaust his administrative remedies "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citations and quotations omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

Here, Plaintiff's general reference to "other officers" in the May 28 appeal is far from sufficient to put the FDOC on notice of any of the conduct Plaintiff alleges against Sergeant Danio in the amended complaint. *See, e.g.*, *Diamond v. Owens*, 131 F.Supp.3d 1346, 1363 (M.D. Ga. 2015) (finding plaintiff failed to exhaust claims against officers at Valdosta State prison because grievance complained only of denial of treatment at Rutledge and thus did not provide notice to prison officials of an internal problem at that prison); *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1309 (M.D. Ala. 2007) ("the filing of grievance forms addressing medical treatment at Hamilton, treatment wholly unrelated to the medical treatment about which the plaintiff complains in the instant cause of action, does not demonstrate proper exhaustion of the grievance procedure as to the instant claims for relief"). Nowhere in that appeal or any of Plaintiff's grievances does Plaintiff allege that Sgt. Danio or any officer other than Sgt. Nousiainen grabbed his "left thumb, arm and wrenched it

high almost touching the back of my head in a wrist lock," applied pressure to his straining joints, or discussed fabricating a DR to justify the use of force, such as he does in the amended complaint. As discussed above, in the grievances and appeals, Plaintiff limits the excessive use of force to Sgt. Nousiainen. Sgt. Danio, therefore, should be dismissed from this action.

### III.   OFFICIAL CAPACITY CLAIMS

As stated above, Sgt. Nousiainen has moved to dismiss Plaintiff's official capacity claim based on immunity under the Eleventh Amendment. Absent a waiver, the Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The State of Florida has not waived immunity and Congress has not expressly abrogated state immunity in section 1983 cases of this type. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in Section 1983 damage suits, . . . [and] Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.") (internal citation and quotations omitted). Thus, the Eleventh Amendment bars Plaintiff's claim for monetary damages against Sgt. Nousiainen in his official capacity.

Case No. 3:22cv5693-LC-HTC

## IV. CONCLUSION

Accordingly, it is RESPECTFULLY RECOMMENDED that:

1. The motion to dismiss, ECF Doc. 27, be GRANTED.

2. Plaintiff's claims against Sergeant Danio be DISMISSED and the clerk be directed to terminate Sergeant Danio as a Defendant in this case.

3. The official capacity claim against Sergeant Nousiainen for monetary damages be DISMISSED.

At Pensacola, Florida, this 22nd day of February, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.